IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEELAM K., <br><br>    **Plaintiff,** <br><br>v. <br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] <br><br>    **Defendant.** | No. 20 C 1146 <br><br> Magistrate Judge Finnegan |

## ORDER

Plaintiff Neelam K. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the ALJ's decision. After careful review of the record and the parties' respective arguments, the Court affirms the ALJ's decision.

## BACKGROUND

Plaintiff filed for DIB on October 17, 2016, alleging disability since September 16, 2015 due to severe depression, anxiety, panic attacks, and migraines. (R. 160, 186). Born in 1963, Plaintiff was 52 years old as of the alleged disability onset date making her a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d). She

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

1

completed the 12th grade and lives with her husband, her two sons, their wives, and a 6-year-old granddaughter. (R. 20, 34-35, 187). From January 2002 to September 2015, Plaintiff worked for Sonoco Plastic Company, first as a hand packer and then as a quality control manager. (R. 45, 187). She stopped working on September 16, 2015 due to her conditions. (R. 186).

The Social Security Administration denied Plaintiff's application initially on January 27, 2017, and again upon reconsideration on April 11, 2017. (R. 60-87). She filed a timely request for a hearing and appeared before administrative law judge Roxanne J. Kelsey (the "ALJ") on October 11, 2018. (R. 32). The ALJ heard testimony from Plaintiff, who was represented by counsel and testified with the assistance of a Punjabi interpreter, as well as from vocational expert James Breen (the "VE"). (R. 32-59). On January 30, 2019, the ALJ found that Plaintiff's headaches, schizophrenia, anxiety disorder, and depressive disorder are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-19).

After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels with several non-exertional restrictions to accommodate for deficits in concentration, persistence, and pace, and social interaction. The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC can perform her past relevant work as a hand packer, and so found Plaintiff not disabled. (R. 23). The Appeals Council denied Plaintiff's request for review on December 16, 2019. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C.

2

§§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) made a flawed RFC determination that was improperly based on only moderate as opposed to marked limitations in social interaction and concentration, persistence, or pace; (2) failed to consider the limiting effects of her migraines in combination with her mental impairments in determining the RFC; and (3) improperly concluded that her hand packer job constituted past relevant work at step four of the sequential analysis. As discussed below, this Court finds that the ALJ's decision is supported by substantial evidence.

## **DISCUSSION**

### A.   Standard of Review

Judicial review of the Commissioner's final decision is authorized by section 405(g) of the Social Security Act (the "SSA"). *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

3

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover DIB under the SSA, a claimant must establish that she is disabled within the meaning of the Act. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A person is disabled if she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Crawford v. Astrue*, 633 F.Supp.2d 618, 630 (N.D. Ill. 2009). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform her past relevant work; and (5) whether the claimant

4

is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.     Analysis**

    **1.     RFC Determination**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that she has the RFC to sustain unskilled work despite suffering from chronic migraine headaches and severe limitations in mental functioning. A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, at *1-2. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

The ALJ found that Plaintiff has moderate limitations in two areas of functioning relevant here: interacting with others; and concentrating, persisting, or maintaining pace. (R. 19). In support of this assessment, the ALJ noted that though Plaintiff is occasionally isolative, she is capable of attending regular medical appointments and was described as comfortable, pleasant, and cooperative with good eye contact and hygiene. (R. 19, 1586, 1605). She also presented with fair attention and concentration, reasonable memory, intact fund of knowledge, and normal thought process. (R. 19, 1586, 1604, 1606, 1758).

5

Plaintiff insists that other "more dire findings . . . paint a far different picture" of her deficits. (Doc. 21, at 9).

Plaintiff cites first to a June 30, 2015 record from psychiatrist Mohanakumari Naidu, M.D., indicating that Plaintiff complained of scattered, fragmented, and unfocused thought process, reduced ability to concentrate, isolative tendencies, and distractibility. (R. 1757). On exam, however, Plaintiff had an appropriate mood, normal thought process, intact associations, reasonable recent and remote memory, fair concentration, intact fund of knowledge, and appropriate insight/judgment. (R. 19, 1758). During a Mental Status Evaluation with consultative examiner Kristen M. Wright, Psy.D., on December 17, 2016, Plaintiff reported symptoms of depression, isolation, anhedonia, and panic attacks, and endorsed the presence of paranoid thinking and auditory hallucinations. (R. 568). Dr. Wright indicated that Plaintiff displayed appropriate thought processes, normal speech, and good eye contact, but she was "moderately impaired" in remote recall of factual information and events, and was "operating below expected developmental levels" in cognitive functioning. (R. 21, 567, 569). Dr. Wright diagnosed schizoaffective disorder and suspected learning disability. (R. 21, 570).

On January 9, 2018, Plaintiff told treating psychiatrist Bindu Gandhiraj, M.D., that she was feeling depressed and anxious with racing thoughts and impaired sleep. Plaintiff also complained of poor energy and concentration levels and said she had feelings of hopelessness and worthlessness. (R. 21, 1630). Dr. Gandhiraj assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 45, representing serious symptoms. (R. 21, 1630, 1633). When Plaintiff returned to Dr. Gandhiraj on February 27, 2018, however, she was feeling better, sleeping better, had better energy and concentration,

6

and no longer felt hopeless or worthless. (R. 21, 1622). Dr. Gandhiraj increased Plaintiff's GAF score to 60, reflecting moderate symptoms. (*Id*.). During a follow-up appointment with Dr. Gandhiraj on May 1, 2018, Plaintiff's mood remained okay though she said that when she felt isolative it caused depression lasting for 3-4 days. (R. 22, 1604). On exam Plaintiff exhibited a depressed mood and constricted affect, but she had normal thought processes and associations, intact judgment and insight, and no abnormal or psychotic thoughts. (R. 22, 1606).

The ALJ properly addressed all of these records and Plaintiff fails to explain how they support a finding of marked as opposed to moderate mental limitations. Notably, Plaintiff completely ignores records from 2017 showing that she consistently reported a better mood, good sleep despite some racing thoughts, better energy levels and concentration, only occasional feelings of hopelessness or worthlessness, and GAF scores between 55 and 68. (R. 1663, 9/11/2017; R. 1675, 7/24/2017; R. 1699, 5/22/2017; R. 1736, 4/3/2017). More importantly, Plaintiff disregards the fact that state agency reviewer Leslie Rudy, Ph.D., determined that she has no more than moderate limitations in mental functioning. Specifically, Dr. Rudy found that Plaintiff has moderate (not marked) limitations in the ability to: maintain attention and concentration for extended periods; work in coordination with or in proximity to others; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers. (R. 82-83). The ALJ afforded this opinion the "most weight" and adopted the moderate findings, explaining that they were "consistent with the overall evidence of record." (R. 22). Plaintiff does not mention Dr. Rudy's opinion, challenge the weight assigned to it, or point to contrary opinions

7

endorsing marked limitations that were entitled to greater weight. Any such arguments are waived. *Truelove v. Berryhill*, 753 F. App'x 393, 397 (7th Cir. 2018) (arguments not raised in the district court are waived).

Plaintiff maintains that remand is still proper because the RFC does not properly account for her limitations even if deemed moderate. The ALJ found that as a result of Plaintiff's moderate limitations in concentration, she cannot understand, remember, and carry out detailed instructions, but she can sustain the concentration necessary for simple work of a routine type if given normal workplace breaks, meaning two 15-minute breaks after two hours of work and a 30-minute break mid-shift. (R. 19). Plaintiff also cannot handle fast paced requirements such as assembly line work or high production quotas, and should experience no more than occasional changes in the work setting. To address Plaintiff's moderate social limitations, the ALJ limited her to occasional work in coordination with or proximity to others, and determined that she may only engage in brief and superficial contact with supervisors, coworkers, and the general public. (R. 19).

Plaintiff objects that a finding of moderate limitations in concentration, persistence, or pace "does not lead to the conclusion that an individual can perform even unskilled work." (Doc. 21, at 10). The Seventh Circuit has cautioned that in general, confining the claimant to simple, routine tasks does not properly capture moderate limitations in concentration, persistence, or pace. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). But the court "has also recognized that in some situations where a consulting physician translates a finding of moderate limitations in concentration, persistence, or pace into an RFC for simple, routine work, the ALJ may rely on that opinion in assigning the RFC." *Youmans v. Colvin*, No. 14 C 7609, 2016 WL 3595729, at *6 (N.D. Ill. July 5,

2016) (citing *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)). Here, Dr. Rudy translated Plaintiff's moderate limitations into an ability to perform simple, unskilled work "without demands for fast pace or high production," with occasional and superficial interaction with other people, and with occasional changes in a relatively static setting. (R. 83-84). The ALJ incorporated these specific limitations into the RFC. (R. 19-20). As noted, Plaintiff does not discuss Dr. Rudy's opinion or argue that the ALJ erred in adopting, and affording great weight to, her findings. Again, all arguments related to the opinion evidence have been waived. *Truelove*, 753 F. App'x at 397.

Plaintiff insists that the RFC remains flawed because the ALJ failed to consider her mental impairments in combination with her migraine headaches. (Doc. 21, at 7-8). The ALJ acknowledged that Plaintiff suffers from chronic migraines but found that they at most "limit her to simple work while she is experiencing one." (R. 22). In reaching this conclusion, the ALJ observed that Plaintiff complained of both mental illness and migraine headaches for years before the September 16, 2015 alleged disability onset date, and the conditions did not prevent her from working. (R. 22, 341, 1798). Plaintiff does not dispute this evidence or argue that her conditions worsened over time. *See Castile*, 617 F.3d at 927-28 ("We believe that Castile's continued employment [after diagnosis] is a factor supporting the ALJ's determination, especially because no evidence was presented to show that her conditions worsened."). As for the medical records, Plaintiff expressly denied having chronic headaches when she saw psychiatrist Dr. Naidu on June 30, 2015. (R. 21, 1758). The following month, on July 14, 2015, Plaintiff told internist Paresh Patel, M.D., that she had a history of migraine headaches and the doctor gave her a prescription for Imitrex. (R. 441). A year and a half later, on March 28, 2017, Plaintiff went to the

9

Advocate Sherman Hospital emergency department due to anxiety and chronic migraine. (R. 956, 970). She received a prescription for trazodone and was discharged home. (R. 972).

On October 30, 2017, Plaintiff saw Sheeba Murphy, FNP, with complaints of migraine headaches and neck and shoulder pain. (R. 849). Ms. Murphy prescribed Topamax and sumatriptan (Imitrex) and referred Plaintiff to a neurologist and pain management physician. (R. 853-54). It does not appear that Plaintiff pursued treatment with a pain management specialist, but on April 10, 2018, she saw neurologist Zahra Afshari, M.D., and reported experiencing headaches 2-3 times per week for the previous 10-12 years (meaning well before the September 2015 alleged disability onset date), with associated nausea, blurred vision, photophobia, and phonophobia. (R. 20, 1585). Dr. Afshari diagnosed chronic intractable migraine without aura and prescribed baclofen, sumatriptan, and a trial of Elavil to assist with the pain. (R. 20, 21, 1587, 1589-90). There is no evidence that Plaintiff received further headache treatment from Dr. Afshari or any other specialist.

Plaintiff does not discuss most of these records or explain how they support greater restrictions than those set forth in the RFC. She merely speculates that her migraines "likely" worsen symptoms of her other mental impairments to such a degree that she would be incapable of staying on task or meeting the attendance requirements of full-time work. (Doc. 21, at 4, 7, 8). Yet Plaintiff points to no physician of record who indicated that she would be off task or absent for a work-preclusive amount of time. *See Stewart v. Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence."); *Stone v. Berryhill*, No. 17 C 3193, 2018 WL 5300381, at *19

(C.D. Ill. Oct. 24, 2018) ("The Court will not reverse the ALJ's decision based on [the plaintiff's] speculation."). Dr. Rudy knew about Plaintiff's migraines and mental impairments when she concluded that Plaintiff can carry out very short and simple instructions, maintain regular attendance, perform activities within a schedule, be punctual within customary tolerances, sustain an ordinary routine, and make simple work-related decisions. (R. 80, 82-83). Plaintiff does not identify any contrary opinion that was entitled to greater weight.

All that remains is Plaintiff's own testimony that her headaches and mental limitations are disabling. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not

11

alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff testified that she has daily anxiety attacks and goes to sleep after taking her prescription medication. (R. 35-36). Though her doctor has increased the medication dosage over time, it does not help much. (R. 37). Plaintiff also experiences crying spells 2-3 times per week and tends to isolate in her room for 2-3 hours at a time. (R. 42, 51). Her family takes her out on occasion but she does not like to leave the house. (R. 51). With respect to her migraines, Plaintiff testified that they can last 3-4 days and sometimes require an injection in the emergency room.[2] (R. 38). Her medications cause side effects such as joint pain that reaches a level of 8-9/10. (R. 38, 40). Plaintiff stated that her doctor told her the migraines occur because of her depression and anxiety. (R. 40).

In discounting Plaintiff's statements, the ALJ noted that the symptoms she described at the hearing differed from those she presented to her physician when seeking treatment. (R. 22). For example, Plaintiff testified that her psychotropic medications make her drowsy, but during appointments with Dr. Gandhiraj on January 9 and May 1, 2018, Plaintiff reported that those medications caused no side effects. (R. 20, 1604, 1630). The ALJ also found Plaintiff's testimony inconsistent with the objective medical evidence, including Dr. Rudy's opinion. (R. 20, 22). Plaintiff does not challenge any aspect of the ALJ's subjective symptom evaluation, and in fact chastises the Commissioner for devoting "a good portion of [her] brief to an argument that Plaintiff neither made nor needed to make." (Doc. 26, at 3). As a result, to the extent Plaintiff believes the ALJ erred in failing to find that she would be off task and absent from work

---

[2] Plaintiff does not cite medical records showing she ever received a migraine-related injection.

12

based on her own testimony regarding her symptoms, the argument is rejected. *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)) ("The ALJ's credibility assessment need not be perfect; it just can't be patently wrong.").

Viewing the record as a whole, the ALJ did not commit reversible error in adopting Dr. Rudy's opinion that Plaintiff has the RFC to sustain full-time work despite her mental impairments and migraine headaches. "As the Supreme Court observed fairly recently, substantial evidence is not a high standard, and requires only evidence that 'a reasonable mind might accept as adequate.'" *Richard C. v. Saul*, No. 19 C 50013, 2020 WL 1139244, at *5 (N.D. Ill. Mar. 9, 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Here, the ALJ sufficiently articulated her reasons for the RFC determination, and that decision is supported by substantial evidence.

### 2. Past Relevant Work

Plaintiff next argues that the case must be reversed or remanded because the ALJ erred in finding her not disabled at step four of the sequential analysis. At step four, an ALJ considers whether a claimant is capable of performing any "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) and (f). Past employment qualifies as past relevant work for purposes of step four if: (1) the claimant performed it within the previous 15 years; (2) it amounts to substantial gainful activity ("SGA"); and (3) it lasted long enough for the claimant "to learn to do it." *Wiggins v. Colvin*, No. 12 C 9384, 2015 WL 2398478, at *5 (N.D. Ill. May 18, 2015) (quoting 20 C.F.R. § 404.1560(b)(1)). Relying on the VE's testimony, the ALJ concluded that Plaintiff is not disabled because she can perform her past relevant work as a hand packer. (R. 23, 56). Plaintiff insists that the hand packer

13

job is not "relevant" for purposes of step four because "there is no indication" she engaged in that work within 15 years of the ALJ's decision (meaning sometime between January 30, 2004 and January 30, 2019). (Doc. 21, at 11). This Court disagrees.

In forms completed as part of the disability application process, Plaintiff stated several times that from January 2002 to September 2015, she worked as a quality control manager at Sonoco Plastic Company. (R. 187, 195, 223, 257). During the October 11, 2018 administrative hearing, however, Plaintiff testified that she only held the quality control manager position for six or seven years, and before receiving that promotion she worked as a hand packer. (R. 45). Assuming Plaintiff first worked as a supervisor in September 2008 (seven years before she stopped working in September 2015), that means she was working as a hand packer for more than four years from January 30, 2004 to September 2008. Plaintiff does not acknowledge or dispute her hearing testimony. It thus suffices to establish that Plaintiff performed the hand packer job within the previous 15 years, and that the job lasted long enough for Plaintiff to "learn to do it." *Wiggins*, 2015 WL 2398478, at *5. As for the third factor, Plaintiff has offered nothing to rebut the presumption that the job constitutes SGA given that her average monthly earnings from 2004 through 2008 exceeded the Social Security Administration's SGA Earnings Guidelines. *Wiggins*, 2015 WL 2398478, at *7 (citing 20 C.F.R. § 404.1574(b); SSR 83–35, 1983 WL 31257, at *1 (1983)). *See also Wyatt v. Astrue*, No. 09 C 5768, 2011 WL 2149414, at *10 (N.D. Ill. June 1, 2011) ("[E]vidence of earnings over a certain level creates a presumption of SGA.").

Viewing the record as a whole, the ALJ did not err in concluding that Plaintiff's hand packer job qualifies as past relevant work. Plaintiff's motion to remand the case for further analysis of this issue is denied.

## **CONCLUSION**

For reasons stated above, Plaintiff's request to reverse or remand the case is denied and the Commissioner's Motion for Summary Judgment [24] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: September 20, 2022

_____
SHEILA FINNEGAN
United States Magistrate Judge